IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

A.J. TAFT COAL COMPANY, INC.,
et al.,

      **Plaintiffs,**

v.

JO ANNE B. BARNHART,
Commissioner of Social Security;
MICHAEL H. HOLLAND, et al.,
Trustees of the United Mine Workers
of America Combined Benefit Fund,

      **Defendants.**

Case No.: CV 03-P-1390-S

**ENTERED**

NOV 1 4 2003

## MEMORANDUM OPINION

This case represents one chapter in a long-running dispute between coal operators, the Commissioner of the Social Security Administration ("Commissioner"), and the Trustees of the United Mine Workers of America Combined Benefit Fund (the "Trustees" and the "Combined Fund," respectively). The dispute centers on the meaning of "reimbursements" in the calculation of the premium formula under § 9704(b)(2) of The Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §§ 9701-9722; 30 U.S.C. § 1232(h) ("Coal Act"). The dispositive issue in this case, and in several cases pending in other districts, is simply a question of statutory interpretation. As discussed below, the Eleventh Circuit, in affirming a decision of The Honorable James H. Hancock from this District, has already decided that issue for this Circuit. *See National Coal Association v. Chater*, 81 F.3d 1077 (11th Cir. 1996).

This case is before the court on the following motions and application: (1) Motion to Transfer to the United States District Court for the District of Columbia (Doc #17) filed by Defendant



Trustees on July 1, 2003; (2) Motion to Dismiss, or, in the Alternative, to Transfer (Doc #31) filed by Defendant Commissioner on July 28, 2001; (3) Motion to Dismiss, or, in the Alternative, to Transfer (Doc #38) filed by Defendant Trustees on August 12, 2003; (4) Application for Preliminary Injunction (Doc #47) filed by Plaintiffs on September 30, 2003; and (5) Motion to Intervene as Plaintiffs (Doc #50) filed October 3, 2003.

For the reasons stated below, the court makes the following determinations. Venue over the Commissioner is proper in this court pursuant to 28 U.S.C. § 1391(e)(3) because at least one plaintiff who resides in this District had a justiciable claim at the time of filing. However, the court finds that the claims of the plaintiffs in this case who reside in the Eleventh Circuit are now moot. The court agrees with the defendants that transfer of this case is appropriate under 28 U.S.C. § 1404(a), but disagrees that the District of Columbia should be the transferee court. The court instead finds it appropriate under § 1404(a) to transfer this case to District of Maryland.

## I.      Background and Procedural History of this Case

The Coal Act requires present and former coal operators, such as the plaintiffs in this case, to pay for the health benefits of coal industry retirees and their dependents. 26 U.S.C. §§ 9702, 9704. Congress passed the Coal Act in 1992 to ensure that retired coal miners and their dependents and widows continue to receive the lifetime health benefits guaranteed by earlier collective bargaining agreements with coal operators. Before the Coal Act was passed, the two multi-employer health care plans that provided benefits to retired miners (the "Plans") were operating at a deficit. The financial instability of the Plans led to a breakdown in labor relations, the cessation of operator contributions to the Plans, and an eleven-month strike by mine workers. *National Coal Association v. Chater*, 81 F.3d 1077, 1078-79 (11th Cir. 1996). In an effort to remedy the funding problems yet

2

maintain a privately financed program, Congress consolidated the Plans into the Combined Fund with financing primarily provided by coal operators.

### A.   "Reimbursements" under the Coal Act

The amount operators must pay to the Combined Fund depends in part on the "per beneficiary premium" calculated by the Commissioner and adjusted annually for inflation. 26 U.S.C. § 9704(b)(2)(B).  Once the Commissioner calculates the formula, the Trustees, as fiduciaries, bill and collect the premiums from the coal operators.   26 U.S.C. § 9704(b)(2)(B).

The premium formula is based on the costs incurred by the Plans in the last year before they were consolidated into the Combined Fund ("the Base Year").  Because the Plans contracted with the Medicare program for many years before consolidation, Congress decided that reimbursements received from Medicare should be subtracted from the Base Year costs.  Thus, the baseline rate for the premium is the "aggregate payments . . . for health benefits (*less reimbursements* but including administrative costs)" made by the Plans during a base year beginning on July 1, 1991.  26 U.S.C. § 9704(b)(2)(A) (emphasis added).

The dispute in this case concerns the calculation of "reimbursements" received by the Combined Fund's predecessors.   As the Eleventh Circuit explained:

> . . . . [Beginning in the base year, HHS] paid a predetermined amount per plan member per month, without regard to the amount of money that the [predecessor] plans actually spent for Medicare-covered services.
>
> . . . .  [I]n the base year, the [predecessor] plans spent $156.8 million on Medicare Part B and related administrative expenses [and] received $182.3 million in risk-capitation payments for Medicare Part B services and related administrative costs, an amount that exceeded actual costs by *$25.5 million*.

*National Coal Association*, 81 F.3d at 1079-80 (footnote omitted and emphasis added).

The interpretation of the word "reimbursements" as it related to the initial surplus of $25.5 million was the impetus for the litigation leading up to this case. The Secretary of Health and Human Services ("the Secretary")[1] initially determined that the $25.5 million received in the base year *should not be counted as reimbursements in the calculation of the baseline premium rate* which determined all future years' premiums. *See National Coal Association*, 81 F.3d at 1080. As a result, the premiums paid by operators were approximately 10% higher ("the higher premium") than they would have been had the Secretary determined that the term "reimbursements" included the additional $25.5 million and set-off the baseline premium rate by that amount.

### B.     The *NCA* Litigation

In April 1994, eight coal operators and the National Coal Association[2] brought suit against the Commissioner before The Honorable James H. Hancock in the Northern District of Alabama challenging the Secretary's interpretation of reimbursements. *National Coal Association v. Shalala*, 1995 WL 1052240, No. CV-94-H-780-S (N.D. Ala. 1994) ("*NCA*"). The Trustees were not parties to that lawsuit. Judge Hancock determined that the Secretary's methodology was flawed because the plain language of the Coal Act required the extra $25.5 million to be included in the calculation of reimbursements and ordered the Commissioner to recompute the baseline premium and all subsequent premiums accordingly ("the lower premium"). The Eleventh Circuit affirmed. *National Coal Association*, 81 F.3d at 1081-82.

---

[1] A 1994 amendment to the Coal Act replaced the Secretary with the Commissioner. 26 U.S.C. § 9706; Social Security Independence and Program Improvements Act, Pub.L. No. 103-296, § 108(h)(9)(A), 108 Stat. 1464, 1487.

[2] The suit was originally filed by the National Coal Association and seven coal operators and an eighth coal operator thereafter intervened.

4

### C.   The Commissioner's 1995 Recalculation

In response to *NCA*, the Commissioner, who had by then succeeded to the responsibility for determining the per-beneficiary rate, applied the lower premium to *all operators* nationwide, not merely those operators who were either parties to the *NCA* litigation or residents of states within the Eleventh Circuit.

### D.   The *Holland I* Litigation

In 1996, the Trustees filed suit in the United States District Court for the District of Columbia challenging the Commissioner's 1995 recalculation. *Holland v. Apfel*, 23 F. Supp. 2d 21 (D.D.C. 1998) ("*Holland I*"). Subsequently, the National Mining Association (purportedly a successor of the National Coal Association) and seven of the eight *NCA* plaintiffs intervened as defendants. The District of Columbia District Court determined in February 2000 that the Secretary's original calculation was correct and ordered the Commissioner to reinstate the higher premium rate. (Trustees' July 1, 2003, Brief in Support of Transfer, at 11 and Exs. 13-14, 17, 19-20 thereto.)

On appeal, the District of Columbia Circuit reversed the district court's judgment upholding the Commissioner's original higher premium interpretation. *Holland v. Apfel*, 309 F.3d 808, 819 (D.C. Cir. 2002). The court further held that the District of Columbia federal courts were not "authorize[d] . . . to lift the existing Eleventh Circuit injunction as to the coal companies who were parties in the prior litigation," *id.* at 815, and "vacated the District Court's injunction insofar as it purport[ed] to bind the Commissioner with respect to coal companies who had the benefit of the Eleventh Circuit judgment," *id.* at 819.

The D.C. Circuit also vacated the Commissioner's 1995 recalculation which implemented the lower premium nationwide and "remanded" to the Social Security Administration for further

justification of the nationwide premium. *Id.* at 819.[3]

      **E.**      **The June 10, 2003 Premium Decision**

In response to the D.C. Circuit's order that she provide justification for the nationwide implementation, the Commissioner indicated that she was unable to locate documents or decisionmakers who could answer why the agency had applied the *NCA* interpretation "nationwide." (Letter from Social Security Administration in Baltimore, MD, dated June 10, 2003, at 2) ("June 10, 2003 Premium Decision" or "Premium Decision").

Moreover, the Commissioner decided that the higher premium originally set by the Secretary was applicable to "those coal operators who were *not parties to the National Coal litigation*." (Premium Decision, at 2) (emphasis added). This "different approach," the Commissioner explained, was adopted "in light of recent litigation and the current financial condition of the Fund." *Id.* Thus, the Commissioner made it very clear that the decision to apply the higher premium to all operators who were not *parties* to *NCA* was a direct result of the D.C. Circuit's *Holland I* opinion. As she stated:

> The recent D.C. Circuit opinion in *Holland* made clear that we are not required to apply the holding of the Eleventh Circuit to coal operators who were not parties to the *National Coal* litigation. Moreover, while considerations of fairness and uniformity remain important, the Fund's worsening financial condition makes it essential that the Fund be afforded all the premium revenues contemplated by the Coal Act.

*Id.*

---

[3] The D.C. Circuit explained that further justification by the Commissioner was necessary because the court was uncertain whether the agency had mistakenly concluded that it was "compelled to adopt" nationwide "an interpretation that it did not prefer" or whether it had voluntarily done so. *Id.* at 816.

### F.    Post-June 10, 2003 Premium Decision Litigation

On June 11, 2003, the day after the Commissioner's announcement that operators who were not parties to *NCA* are obligated to pay higher premiums, ninety-eight (98) coal operators filed this lawsuit in the Northern District of Alabama against the Commissioner and the Trustees.[4]    The plaintiffs' Amended Complaint in this case requests injunctive relief from the Commissioner's 2003 Premium Decision and a declaratory judgment regarding the correct premium amount under §9704(b) of the Coal Act. (*See* July 10, 2003, Plaintiffs' Amended Complaint, Counts I-III.) Generally, the plaintiffs claim that the Commissioner's 2003 Premium Decision violates § 9704(b) of the Coal Act and this court's decision in *NCA*. (*Id.*) Of the ninety-eight (98) plaintiffs in this case, only four — A.J. Taft Coal Company, Inc., Alabama Electric Cooperative, Cowin & Company, Inc., and U.S. Steel Mining Company, LLC, — are incorporated in Alabama.[5]    "Plaintiffs have chosen this forum because this District Court and the Eleventh Circuit previously have resolved the very statutory construction issue presented in this action.  Therefore, this Court may rule summarily on this action." (Plaintiffs' July 16, 2003, Opposition Brief, at 2.)

On June 12, 2003, the Commissioner filed a "Notice of Decision on Remand" with the D.C.

---

[4] None of the plaintiffs appears to contend that it was a party in *NCA*, though thirty-eight (38) of them do claim that they are due the lower premium rate because they are "related" to one or more parties in the *NCA* litigation. (July 10, 2003, Plaintiffs' Amended Complaint, ¶¶ 37-38.)

[5] As discussed *infra*, only three of those companies reside in Alabama for venue purposes (A.J. Taft Coal Company, Inc., Alabama Electric Cooperative, and Cowin & Company, Inc.) and of those three, only two have standing to sue because Alabama Electric Cooperative has no justiciable claim as it owes $0 in premiums.  Therefore, only A.J. Taft Coal Company, Inc. and Cowin & Company, Inc. are properly counted for venue purposes.  Although it appears from the plaintiffs' Amended Complaint that Drummond Coal Sales Inc. is also incorporated in Alabama (*see* July 10, 2003, Plaintiffs' Amended Complaint, at 16), at oral argument the parties corrected that error and represented that Drummond Coal Sales Inc. is, in fact, incorporated in Delaware.

District Court attaching the June 10, 2003 Premium Decision.  That same day, the Trustees filed a motion in the D.C. District Court to reopen the *Holland I* litigation.  A few days later, the Trustees also requested leave to file an amended complaint in the D.C. District Court.

On July 8, 2003, the D.C. District Court denied both of the Trustees' motions on the ground that the court no longer had jurisdiction over the proceedings related to the D.C. Circuit's remand to the Social Security Administration.  The court instructed the Trustees to pursue any grievances against the Social Security Administration by filing a new lawsuit.

One week later, the Trustees filed a second lawsuit in the District of Columbia against approximately 100 coal operator defendants (none of whom were parties to *NCA*, but many of whom are plaintiffs in this case).  *Holland v. A.T. Massey Coal Co.*, No. 03-1523 (filed July 15, 2003) ("*Holland II*").  In *Holland II*, the Trustees seek a declaration that the higher premium of the 2003 Premium Decision is valid and that none of the named coal operators defendants are entitled to the lower premium applicable to *NCA* parties.

When *Holland II* was filed, approximately seventy-three (73) of the operator-defendants named in that case were also plaintiffs in this case.  Moreover, an additional thirty-eight (38) of the operator-defendants in *Holland II* – none of whom alleges Alabama residency – have moved to intervene in this action.  (October 3, 2003, Motion to Intervene.)

Two weeks after the Trustees filed *Holland II*, the Commissioner filed in this case a motion to dismiss or, in the alternative, to transfer the case to U.S. District Court for the District of Columbia.  In her brief in support of that motion, the Commissioner stated that "the assumption implicit in the 2003 Premium Decision was that [the Commissioner] was addressing only whether to adopt the Eleventh Circuit decision [in *NCA*] . . . *outside* the Eleventh Circuit.  The 2003 Premium

8

Decision thus . . . leaves undisturbed *for Eleventh Circuit companies* the lower premium rates established by *NCA*." (Commissioner's July 28, 2003, Brief in Support of Motion to Dismiss or Transfer, at 10) (emphasis added).

According to the Commissioner's brief, the lower premium rate which, as of the June 10, 2003 Premium Decision applied only to the "parties to the *National Coal* litigation," now applies to the broader group of "Eleventh Circuit companies." The Trustees have represented to this court that, based on the Commissioner's acknowledgment that the lower premium applies to all Eleventh Circuit resident companies, the Trustees have now dismissed from the *Holland II* litigation all companies who reside in the Eleventh Circuit. (*See* D.D.C. Notice of Dismissal filed Aug. 5, 2003, in *Holland v. A.J. Taft Coal Co., et al.*, No. 03-1523.) The companies in this case who reside in the Eleventh Circuit are among those dismissed from *Holland II*. In response to the court's questioning at oral argument held on October 21, 2003, the Commissioner filed a written concession that assures the lower premium rate "will remain in effect for all plan years for residents of the Eleventh Circuit" unless a higher rate is authorized by the Eleventh Circuit, the Supreme Court, or Congress. (Defendant Commissioner's October 22, 2003, Response to Inquiry of Court.)

## II.    Current Posture of this Case

The Commissioner's application of the lower rate to all companies who reside in the Eleventh Circuit is the basis for the defendants' venue challenge in this lawsuit. The defendants argue that, because the Commissioner does not seek to enforce the higher premium against companies that reside in Alabama, Georgia and Florida, the Eleventh Circuit resident plaintiffs have no case or controversy with the defendants and thus cannot establish venue against the Commissioner in the Northern District of Alabama under 28 U.S.C. § 1391(e)(3).

9

This Court now has before it ninety-eight (98) plaintiff coal companies who challenge the correctness of the Commissioner's June 10, 2003 Premium Decision because they desire the lower premium calculation. There is a disagreement between the Eleventh Circuit and the D.C. Circuit as to whether or not the term "reimbursements" is ambiguous. *Compare National Coal Association*, 81 F.3d at 1081-82 (finding that "reimbursements" is unambiguous on its face and affirming the district court's mandate that the Commissioner apply the lower premium) *with Holland*, 309 F.3d at 425 ("If anything, the Eleventh Circuit's opinion seems to confirm the statute's ambiguity . . . . We can discern no plain meaning [of "reimbursements"] in this case, however.").

Although the circuits are split on this issue, it is clear that the result in this court is preordained. If the court were to reach the merits of this case, it would apply the lower premium consistent with the *NCA* decision because (1) it is bound by the Eleventh Circuit's decision in that case and, in any event, (2) it believes the *NCA* holding is the correct one. It is equally clear that the plaintiff coal companies have chosen to bring suit in a forum that virtually guarantees the application of the lower premium rate and assures them victory.

Although this case is pending in the Eleventh Circuit, the ninety-four (94) plaintiffs in this case who have a justiciable claim *all reside outside the Eleventh Circuit.* All four of the plaintiffs who reside in the Eleventh Circuit were billed at the lower premium rate and have no case or controversy with the defendants because, in light of the unequivocal representation of the Commissioner, they will continue to receive the lower rate absent a change in the law by the Eleventh Circuit, the United States Supreme Court, or Congress. (*See* October 22, 2003, Defendant Commissioner's Response to Inquiry of Court; *see also* discussion *infra* Section III.A.)  Moreover, the  plaintiffs in this case who reside outside the Eleventh Circuit are entangled in the *Holland II*

10

litigation currently pending in the D.C. Circuit, although thirty-eight (38) of the *Holland II* defendant coal companies have sought to intervene in this case. (*See* October 3, 2003, Motion to Intervene.) The Trustees have represented that if the lower premium applies to all operators for the remaining life of the Combined Fund, the resulting loss to the Combined Fund – and thus to benefits paid to retired mine workers and their beneficiaries and widows – totals several hundred million dollars. (*See* Trustees' July 1, 2003, Brief in Support of Transfer, at 7 and Ex. 2 thereto.)

Hence, as will be even more evident below, this case now involves a dispute between the Commissioner and Trustees on one hand, and, on the other, a number of coal operators (1) who do not reside in either the Eleventh or D.C. Circuits and (2) who were neither parties to the Eleventh Circuit's *NCA* case nor the D.C. Circuit's *Holland I* litigation. Nevertheless, the plaintiffs seek the "protection" of the *NCA* case and the defendants seek to transfer this case to Washington, D.C., in order to benefit from the *Holland I* decision.

## III.  Discussion

### A.  Venue in this Case Is Proper in the Northern District of Alabama.

Both the Commissioner and the Trustees claim that this case is due to be dismissed or transferred because venue is improper as to the Commissioner in the Northern District of Alabama under 28 U.S.C. § 1391(e).[6]  Because the plaintiffs have brought suit against the Commissioner of

---

[6] Apart from their argument that (1) the Commissioner is a Fed. R. Civ. P. 19 indispensable party to this action and (2) the case should be dismissed or transferred if venue is improper as to the Commissioner, the Trustees cannot present any improper venue motion of their own. First, even if the Commissioner was correct in arguing that venue is improper as to her by virtue of § 1391(e), that does not mean that venue is improper as to the Trustees for the same reason. *Camp v. Gress*, 250 U.S. 308, 316 (1919); *see also Goldberg v. Wharf Constructers*, 209 F. Supp. 499, 503 (N.D. Ala. 1962) (Lynne, J.) ("It is well settled...that the defense of improper venue is personal to the party to whom it applies ...."). Second, as discussed *infra*, the Trustees have not asserted that venue in the Northern District of Alabama is improper *as to them*.

Social Security in her official capacity, § 1391(e) is the appropriate venue statute for the claims filed

against her in this case.  It provides in relevant part:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity . . . may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred ... or (3) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies where not a party.

28 U.S.C. § 1391(e).  The plaintiffs claim only that venue is appropriate under § 1391(e)(3).  (*See*

Plaintiffs' August 13, 2003, Opposition Brief, at 21.)[7]

### 1.   Any Argument That Venue Is Improper as to the Trustees Has Been Waived.

As a threshold matter, the court notes that § 1391(e) does not confer venue over the Trustees

because they are nonfederal defendants.   "[A] defendant" in 1391(e)(1) refers only to federal

agencies and officers. *Rogers v. Civil Air Patrol*, 129 F. Supp. 2d 1334, 1338 (M.D. Ala. 2001);

*Lamont v. Haig*, 590 F.2d 1124, 1128-1129 (D.C. Cir. 1978); *Reuben H. Donnelley Corp. v. F.T.C.*,

580 F.2d 264, 266 (7th Cir.1978); *see also* H. Rep. No. 94-1656, at 19 (1976), reprinted in 1976

U.S.C.C.A.N. 5109, 6139-40 (noting that venue determinations for federal and non-federal

defendants are separate, even where they are joined in the same action); 15 CHARLES A. WRIGHT,

---

[7] The parties concede that § 1391(e)(1) is not applicable because the Commissioner does not reside in the Northern District of Alabama. Although the court indicated at oral argument that it would entertain argument regarding venue under both §§ 1391(e)(2) and (e)(3), the plaintiffs declined to assert (e)(2) and indicated they stand only on (e)(3). Because the parties agree that §1391(e)(3) is the only possible basis for venue in this action, the court will focus its analysis on that provision.

ARTHUR R. MILLER & EDWARD H. COOPER, *JURISDICTION 2D*, § 3815, 164-65 (1986). For venue to

be proper over the Trustees in this court, they must satisfy "such other venue requirements as would

be applicable if the United States or one of its officers, employees, or agencies were not a party." 28

U.S.C. § 1391(e).

That being said, the court need not conduct an independent analysis of whether venue in the

Northern District of Alabama is appropriate as to the Trustees under 28 U.S.C. § 1391(b), the general

venue provision for cases involving federal question jurisdiction, because neither the Commissioner

nor the Trustees raised as a defense improper venue under that section. *See* Fed. R. Civ. P. 12(h)(1);

*Lipofsky v. New York State Workers Compensation Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1985)

(finding that improper venue, unlike lack of subject matter jurisdiction which requires dismissal on

the court's own motion if not raised by the parties, is waived when a defendant files a responsive

pleading or a Rule 12 motion failing to assert it). Accordingly, the court finds that any objection to

improper venue over the Trustees has been waived and the court need only address venue under

§ 1391(e).[8]

### 2. **Venue Is Proper under § 1391(e)(3) If "A" Plaintiff Resides in this District.**

First, the Defendants claim that venue is improper under § 1391(e)(3) because that provision

requires that *all* plaintiffs reside in the judicial district in which the claim is brought.

For over thirty years federal courts have conclusively and consistently held that the statutory

_____

[8]As a practical matter, it is of no moment that the defendants waived any objection to
improper venue over the Trustees given the court's decision to transfer the case under 28 U.S.C.
§ 1404(a) to the District of Maryland. Even if this court were to decide that venue *was improper* in
the Northern District of Alabama as to any of the defendants, the court nonetheless would have
transferred the case to the District of Maryland under 28 U.S.C. § 1406(a). As discussed *infra*
Section III.B., venue in the District of Maryland is appropriate as to the Commissioner under either
§ 1391(e)(1) or (e)(2) and as to the Trustees under § 1391(b).

language in 28 U.S.C. § 1391(e)(3) regarding the residency of "the plaintiff" should be interpreted to mean *any* plaintiff rather than *all* plaintiffs. *See Sidney Coal Co., Inc. v. Massanari*, 221 F. Supp. 2d 755, 766-767 (E.D. Ky 2002); *Favereau v. United States*, 44 F. Supp. 2d 68, 70 (D.Me.1999); *Minn-Dak Farmers Co-op. v. Espy*, 851 F. Supp. 1423, 1425 (D.N.D.1994); Aug. 12 order filed in *NCA v. Shalala*, No. CV 94-H-0780-S (N.D. Ala.1994); *Finley v. National Endowment for the Arts*, 795 F. Supp. 1457, 1466-67 (C.D. Cal.1992), *aff'd* 100 F.3d 671 (9th Cir.1996), *rev'd and remanded on other grounds by* 524 U.S. 569 (1998); *Ry. Labor Executives' Association v. ICC*, 958 F.2d 252, 256 (9th Cir.1991); *National Air Traffic Controllers Association v. Burnley*, 700 F. Supp. 1043, 1045 (N.D. Cal.1988); *Jewish War Veterans v. U.S.*, 695 F. Supp. 1, 2 n.3 (D.D.C.1987); *National Treasury Employees Union v. Von Raab*, 649 F. Supp. 380, 383 (E.D. La.1986), *vacated on the merits*, 816 F.2d 170 (5th Cir.1987); *Santa Fe International Corp. v. Watt*, 580 F. Supp. 27, 29 n.4 (D.Del.1984); *Amoco Prod. Co. v. Dept. of Energy*, 469 F. Supp. 236, 242 (D. Del.1979); *Columbia Power Trades Council v. Dept. of Energy*, 496 F. Supp. 186, 189 (W.D. Wash.1980), *vacated and remanded for want of subject matter jurisdiction*, 671 F.2d 325 (9th Cir.1982); *National Distillers and Chemical Corp. v. Dept. of Energy*, 487 F. Supp. 34, 36 (D. Del.1980); *Standard Oil v. FTC*, No. H 78-485, 1979 WL 1605, *1-*2 (N.D. Ind. March 28, 1979); *Dow Chemical, USA v. Consumer Prod. Safety Commission*, 459 F. Supp. 378, 384 n.4 (W.D. La.1978); *Exxon Corp. v. FTC*, 588 F.2d 895, 898-99 (3d Cir. 1978); *Kenyatta v. Kelley*, 430 F. Supp. 1328, 1330, n.7 (E.D. Pa.1977); *Candarini v. Attorney Gen. of U.S.*, 369 F. Supp. 1132, 1135 (E.D.N.Y.1974); *Holtzman v. Richardson*, 361 F. Supp. 544, 552 (E.D.N.Y.1973), *rev'd on other grounds sub. nom. Holtzman v. Schlesinger*, 484 F.2d 1307 (2d Cir.1973); *Natural Res. Def. Council, Inc. v. TVA*, 340 F. Supp. 400, 405-06 (S.D.N.Y.1971), *rev'd on other grounds*, 459 F.2d 255 (2d Cir.1972); *Environmental Defense*

14

*Fund, Inc. v. Corps of Engineers*, 325 F. Supp. 728, 731-32 (E.D. Ark. 1971), *aff'd* 470 F.2d 289 (8th Cir. 1972); *see also* 9 A.L.R. Fed. 719 (pocket part) (1971); 15 CHARLES A. WRIGHT, ARTHUR R. MILLER AND EDWARD H. COOPER, *FEDERAL PRACTICE AND PROCEDURE*, §§ 1107, 3807-3815 (2d ed.1986).

At oral argument, counsel for both the Commissioner and the Trustees conceded that, even with the vast resources of their respective law groups, they could not identify a single case deciding that § 1391(e)(3) should be interpreted to mean *all* plaintiffs. In light of the long-standing case law, the court rejects the Commissioner's proposition that the court independently reexamine this issue. This court concludes that under 28 U.S.C. § 1391(e)(3), a suit can be brought in any district in which a single plaintiff resides. The court now turns to the second part of this analysis, whether a single plaintiff residing in this District had a justiciable claim.

### 3. <u>Venue Is Proper under § 1391(e)(3) Because at Least One Plaintiff Incorporated in this Judicial District Had a Justiciable Claim When the Complaint Was Filed.</u>

As an alternative argument, the defendants contend that *no* plaintiff residing in this District has a justiciable claim against the Trustees or the Commissioner.[9] For purposes of § 1391(e)(3), "a corporation resides only in the state in which it is incorporated." *Flowers Indus., Inc. v. FTC*, 835 F.2d 775, 777 (11th Cir. 1987). The court finds that, out of the ninety-eight (98) plaintiffs who brought this case initially, only two of those companies were incorporated in Alabama at the time

---

[9] The Commissioner claims that there are two sets of plaintiffs who lack justiciable claims against the defendants: (1) plaintiffs entitled to the benefit of *NCA* because they were parties or in privity with parties to the *NCA* litigation and (2) plaintiffs who reside in Alabama. (Commissioner's July 28, 2003, Brief in Support of Motion to Dismiss or Transfer at 8-10.) For purposes of whether resident plaintiffs had standing at the time of the filing and thus can be used to calculate venue, this court need only reach the question of whether a case or controversy existed between the Commissioner and the second set of plaintiffs–those who reside in this District.

of filing and had a justiciable claim: A.J. Taft Coal Company, Inc. and Cowin & Company, Inc. ("the Alabama plaintiffs").[10] Nonetheless, because at least *a plaintiff* residing in Alabama had a justiciable claim when the Complaint was filed, venue is proper.

Before progressing to the court's analysis, it is important to understand the defendants' somewhat circuitous venue argument. Their contention appears to be a two-step approach. First, they maintain that the claims brought by the Alabama plaintiffs are not justiciable because those plaintiffs are not subject to the higher premium. Second, building on the assumption that the Alabama plaintiffs' claims are not appropriately in the case, venue becomes improper under §1391(e)(3) because no plaintiff residing in this District has a justiciable claim.[11] The defendants' venue argument fails for two reasons. First, venue is determined at the time of filing, not later in the case after parties have been dismissed.[12] Second, even if the claims of the two Alabama plaintiffs

---

[10] Although there are currently four plaintiffs in this lawsuit who are incorporated in Alabama, only two of those are appropriately counted for venue purposes. U.S. Steel Mining Company, LLC became incorporated in Alabama on or about September 16, 2003, several months after the case was filed, and thus U.S. Steel is not relevant to the discussion of venue at the time of filing. Moreover, even though Alabama Electric was incorporated in Alabama at the time of filing, Alabama Electric never had a justiciable claim against the Commissioner because it has a $0 balance, owes no premium, and has not been assessed a premium at any time relevant to the case before the court.

[11] The defendants take this argument one step further, perhaps fearing that the court may find venue improper under § 1391(e) but remedy the problem by dismissing only the Commissioner while allowing the case to proceed against the Trustees. The defendants contend that the Commissioner is an indispensable party under Fed. R. Civ. P. 19(a) and thus the entire case must be dismissed or transferred because the plaintiffs cannot proceed without the Commissioner. The court need not address this argument given the court's decision to transfer the case in its entirety to the District of Maryland, where venue is proper as to the Commissioner under §1391(e)(1) or (e)(2). (*See* discussion *infra* Section III.B.)

[12] Moreover, as explained below, the defendants' assertion that this court can reevaluate venue throughout the case confuses the doctrines of standing and mootness. Although both of these are subsumed under the more general "case or controversy" doctrine, they are separate and distinct.

became moot during the course of the litigation, those plaintiffs had standing to bring the lawsuit initially and therefore venue is proper.

### a. Venue Is Determined at the Time the Complaint Is Filed.

The defendants' argument that venue should be evaluated, not when the complaint was filed, but rather on the date this court considered their motion to dismiss is premised on the decision of *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8th Cir. 1990). This court is not inclined to follow *Knowlton* for two reasons. First, the authority cited by *Knowlton* for the premise that *venue* properly can be reassessed after filing consists only of a case addressing the effect of dismissed parties on *diversity jurisdiction*, not venue. *See Knowlton*, 900 F.2d 1196, 1200-01 (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989)). Second, and more importantly, this court is bound to follow the controlling law in this Circuit, *Flowers Indus. v. FTC*, 835 F.2d 775 (11th Cir. 1987), which makes clear that "venue must be determined based on the facts at the time of filing [the complaint]." *Flowers Indus.*, 835 F.2d at 776 n.1.

### b. Standing, like Venue, Is Determined at the Time the Complaint Is Filed, While Mootness Is a Temporal Doctrine.

Article III of the Constitution limits federal-court jurisdiction to "cases" and "controversies." Whether a case or controversy exists turns on "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Wendy's Intern, Inc. v. City of Birmingham*, 868 F.2d 433, 436 (11th Cir. 1989) (quoting *Maryland Casualty Co. v. Pacific Oil Co.*, 312 U.S. 270, 273 (1941)). Standing, therefore, emphasizes "whether the party invoking federal court jurisdiction has 'a personal stake in the outcome of the

controversy,' and whether the dispute touches upon 'the legal relations of parties having adverse legal interests.'" *Flast v. Cohen*, 392 U.S. 83, 100-101 (1968) (internal citations omitted).

Standing, like venue, is a snapshot of the justiciability of each plaintiff's claims at the time of filing. *Atlanta Gas Light Co. v. Aetna Casualty and Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995). Mootness, on the other hand, is "'the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *United States Parole Commission v. Geraghty*, 445 U.S. 388, 395-97 (1980) (citations omitted). Mootness, unlike standing, requires the court to reevaluate the viability of the claim throughout the case.

It is entirely possible that a claim may be justiciable when the complaint is filed, but may later become moot. As discussed below, that is the case here with respect to the claims of the plaintiffs incorporated in Alabama. However, the fact that the claims of the Alabama plaintiffs in this case became moot as the lawsuit progressed does not retroactively revoke their initial standing to file this lawsuit.

### c. Although Their Claims Have Become Moot, at Least One Plaintiff Residing in Alabama Had Standing to File this Case.

Venue is proper in this court because at least one Alabama plaintiff had standing. Standing requires, at an "irreducible minimum," that each plaintiff has an "actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Atlanta Gas Light Co. v. Aetna Casualty and Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995).

Defendants argue that no Alabama plaintiff had a justiciable claim as of June 11, 2003, the

date of filing, because the June 10, 2003 Premium Decision ensured that all residents of the Eleventh Circuit would be billed at the lower premium rate.   Looking to the plain language of the June 10, 2003 Premium Decision, however, the Commissioner clearly limits the application of the lower premium to "parties to the *National Coal* litigation." (2003 Premium Decision, at 2.)  Undoubtedly, the Commissioner adopted the language of its 2003 Premium Decision from the D.C. Circuit's *Holland I* holding that the Eleventh Circuit's injunction in *NCA* guarantees the lower premium only to the parties of *NCA*. (2003 Premium Decision, at 2) ("The recent D.C. Circuit opinion in *Holland* made clear that we are not required to apply the holding of the Eleventh Circuit to coal operators who were not parties to the *National Coal* litigation.").  No plaintiff in this case was a party to *NCA*.

Despite the clear wording of the 2003 Premium Decision, the defendants maintain that the Commissioner subsequently "clarified" the meaning of the decision, thus broadening the application of the lower premium beyond just *NCA* parties.  After the filing of this lawsuit, the Commissioner "acknowledged" that companies residing in the Eleventh Circuit and companies "in privity" with parties to *NCA* are entitled to the lower premium rates. (*See* Trustees' October 17, 2003, "Four Issues Brief," at 2-4.)  Defendants maintain that the Commissioner's "clarification" renders the claims of Eleventh Circuit resident plaintiffs non-justiciable.  However, without question, the clarification (*i.e.*, no Eleventh Circuit residents will be charged the higher premium) is wholly different than the plain language of the Premium Decision (*i.e.*, no *NCA* party will be charged the higher premium).  There is no question that as of June 11, 2003, the day this case was filed and the day after the 2003 Premium Decision was rendered, no plaintiff in this case was guaranteed

19

application of the lower premium rate.[13] Thus, at the time this case was filed, at least two of the Alabama plaintiffs had standing to bring suit against the Commissioner and to urge this court to enter an order requiring the Commissioner to comply with the *NCA* case.

Although the subsequent "clarification" by the Commissioner does not affect standing, it obviously does activate the mootness doctrine. At least by October 22, 2003, the date the Commissioner filed her written representation with the court, her once theoretical acknowledgment that Eleventh Circuit residents would be billed at the lower rate became reality. Alabama companies have only received bills at the lower premium rate, (Carl Tennille Decl. ¶ 4); furthermore, the Commissioner now has conceded in writing that the lower premium rate "will remain in effect for all plan years for residents of the Eleventh Circuit" unless a higher rate is authorized by the Eleventh Circuit, the Supreme Court, or Congress. (October 22, 2003, Defendant Commissioner's Response to Inquiry of Court.)

The Commissioner's October 22 concession was filed in response to this court's questioning at oral argument the day before. Although the plaintiffs contend that, pursuant to *Dixie Fuel Co. v. Commissioner of Social Sec.*, 171 F.3d 1052 (6th Cir 1999), the Commissioner's voluntary concession at oral argument does not render a case moot, the court disagrees based on the breadth of the concession in this case. This court was aware, prior to oral argument in this case, of the *Dixie*

---

[13] This finding is also buttressed by the actions of the Trustees who candidly conceded at oral argument that they, too, believed as of June 11, 2003 that the Commissioner's decision only applied to *NCA* parties. The Trustees' belief is evidenced by (1) their decision to file *Holland II* against the Alabama companies who were not parties to *NCA* (only after the Commissioner "clarified" that the lower premium applies to Alabama companies did the Trustees dismiss the Alabama companies) and (2) the Trustees' failure to argue improper venue in their July 1, 2003, Rule 12(b) motion because they believed at that time that Alabama companies had justiciable claims, making venue proper against the Commissioner here.

*Fuel* concession and the Sixth Circuit's analysis in that case and *purposely* sought the particular concession the Commissioner refused to make in *Dixie Fuel*. The *Dixie Fuel* court held that, "Although the SSA conceded that these particular assignments to Dixie Fuel were void . . . , *it did not concede that it may not or would not again assign beneficiaries to Dixie Fuel. Therefore, the case is not moot.*" *Dixie Fuel*, 171 F.3d at 1057 (emphasis added). By contrast, the Commissioner's concession in this case was prospective and qualified only to the extent this Circuit, the Supreme Court, or Congress intervenes to compel a different result.

Accordingly, the court cannot conceive of any relief that is not already available under the October 22 filed concession of the Commissioner.[14]  Although "'mere voluntary cessation of allegedly illegal conduct does not moot a case . . . , [a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior *could not reasonably be expected to recur.* . . .'" *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-36 (1953)) (emphasis added). In this case, given the Commissioner's clear concession, "'the likelihood of further violations is sufficiently remote to make injunctive relief unnecessary.'" *Id.*

Thus, with the exception of Alabama Electric, the claims of the companies who resided in the Eleventh Circuit at the time of filing are properly considered for venue because standing existed

---

[14] The plaintiffs' argument appears to be that a judgment, presumably from this court, would protect the Eleventh Circuit resident plaintiffs more than the Commissioner's concession. First, the court does not understand how that could be the case. Even if the court were to rule that the plaintiffs are entitled to the lower premium, the Eleventh Circuit sitting *en banc* and the United States Supreme Court could reverse that judgment and, further, Congress could always amend the statute and abrogate the *NCA* decision. Second, and even more importantly, because the Commissioner's concession moots the claims of those plaintiffs who reside in the Eleventh Circuit, the plaintiffs' argument amounts to little more than a request for an advisory opinion by this court. This court cannot grant hypothetical relief to plaintiffs whose claims are now moot.

when this case was filed.  However, based upon the Commissioner's concession filed with the court, those claims have become moot and are due to be dismissed.[15]  Accordingly, the court will dismiss (1) the now moot claims of A.J. Taft Coal Company, Inc. and Cowin & Company, Inc., (2) the claims of Alabama Electric, who lacked standing from the date this case was filed, and (3) the claims of U.S. Steel Mining Company, LLC, who, as of September 2003, resides in the Eleventh Circuit.

**B.     For the Convenience of Parties and Witnesses, and in the Interest of Justice, the Court Transfers this Case under 28 U.S.C. § 1404(a) to the District of Maryland, Where the Case Originally Could Have Been Brought**.

The Trustees and Commissioner both urge this court to transfer this case under 28 U.S.C. § 1404(a) to the District of Columbia, where *Holland II* is pending.  The court deems transfer appropriate, but, for the convenience of parties and witnesses and in the interest of justice, the court finds it more appropriate to transfer the case to the District of Maryland.  "District courts have broad discretion in deciding whether to transfer an action to a more convenient forum."  *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 503 (M.D. Ala.1994).  The decision of whether a case should be transferred under § 1404(a) is "'an individualized case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van*

---

[15] The court is mindful that there *may* be other claims, asserted by non-Eleventh Circuit resident plaintiffs in this case, that are also moot because the defendants have voluntarily applied the lower premium rate to those plaintiffs.  For example, the Commissioner apparently decided to apply the lower rate to companies "in privity" with *NCA* parties and also to companies that were members "of the National Coal Association throughout the district court proceedings in *NCA*."  (*See* Trustees' October 17, 2003, "Four Issues Brief," at 2 n.1.)  The defendants allege that some of the plaintiffs in this case fall into those categories.  Whether these claims are actually moot, however, is a difficult question given the mutable definition of "privity" and the fact that these plaintiffs were not covered by the Commissioner's October 22, 2003, concession. The court specifically declines to rule on the justiciability of those claims because they have no impact on the court's venue analysis and are more appropriately considered by the transferee court.

*Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

28 U.S.C. § 1404(a) codifies (with some additions) the common law doctrine of *forum non conveniens. See* 5 CHARLES A. WRIGHT, ARTHUR R. MILLER AND EDWARD H. COOPER, *FEDERAL PRACTICE AND PROCEDURE*, § 1352 (1969). Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). The analysis under § 1404(a) is a two-part inquiry. *Folkes v. Haley*, 64 F. Supp. 2d 1152, 1154 (M.D. Ala. 1999) (relying on *Ricoh Corp.*, 487 U.S. at 29). As a threshold matter, the court must consider if the case "might have been brought" in the transferee court. 28 U.S.C. § 1404(a). Second, the court must ask whether the balance of factors under § 1404(a) weighs in favor of transferring this action to the transferee court. 28 U.S.C. § 1404(a).

### 1. __This Case Could Have Been Brought in the District of Maryland.__

It is clear that this action could have been brought in the District of Maryland because venue is proper in that District as to the Commissioner under 28 U.S.C. § 1391(e)(1) and (e)(2) and as to the Trustees under 28 U.S.C. § 1391(b).[16] As a threshold matter, the court notes §§ 1391(e)(2) and 1391(b) both confer venue in the district where "a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(e)(2); 28 U.S.C. § 1391(b).

---

[16]As discussed *supra* Section III.A., venue determinations for federal and non-federal defendants joined in the same action must be made separately. For the Commissioner, the appropriate venue provision is § 1391(e). For the Trustees, the court looks to the general venue provision for federal question cases, § 1391(b). Section 1391(b) states in relevant part: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State ... [or] ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ...." 28 U.S.C. §1391(b).

#### a. Section 1391(e)(1) Confers Venue over the Commissioner in Maryland.

As discussed earlier, venue is appropriate as to the Commissioner in any judicial district in which "a [federal] defendant in the action resides." 28 U.S.C. § 1391(e)(1).  For venue purposes, the residence of a federal officer is the place where she performs her official duties. *Reuben H. Donnelley Corp. v. F. T. C.*, 580 F.2d 264 (7th Cir. 1978).  Officers and agencies of the United States can have more than one residence and therefore, venue can properly lie in more than one jurisdiction. *Bartman v. Cheney*, 827 F. Supp. 1 (D.D.C. 1993).  Because the Social Security Administration has principal offices in both the District of Columbia and Baltimore, Maryland,  (Commissioner's July 28, 2003, Brief in Support of Motion to Dismiss or Transfer, at 12), venue is proper in either district.

#### b. Because the June 10, 2003 Premium Decision Was Made in Baltimore, Maryland, Venue Is Proper in Maryland as to the Commissioner under § 1391(e)(2) and the Trustees under § 1391(b).

Venue is proper under as to the Commissioner under § 1391(e)(2) and the Trustees under §1391(b) where "a substantial part of the events or omissions giving rise to the claim occurred ...." 28 U.S.C. § 1391(e)(2); 28 U.S.C. § 1391(b). Courts applying this statute look first at what events give rise to the claim. *McDaniel v. IBP, Inc.*, 89 F. Supp. 2d 1289, 1294 (M.D.Ala.2000); *United States v. Hartbrodt*, 773 F. Supp. 1240, 1242 (S.D. Iowa 1991).   Section 1391(e)(2) has been interpreted as requiring a court to focus on the actions of the defendant, not of the plaintiff.  *Rogers v. Civil Air Patrol*, 129 F. Supp. 2d 1334, 1338-39 (M.D. Ala. 2001) (citing *Gaines, Emhof, Metzler & Kriner v. Nisberg*, 843 F. Supp. 851, 854 (W.D.N.Y.1994)).

The plaintiffs' Amended Complaint in this case requests injunctive relief from the Commissioner's 2003 Premium Decision and a declaratory judgment regarding the correct premium

24

amount under § 9704(b) of the Coal Act. (*See* July 10, 2003, Plaintiffs' Amended Complaint,

Counts I-III.) Generally, the plaintiffs claim that the Commissioner's 2003 Premium Decision

violates § 9704(b) of the Coal Act and this court's decision in *NCA*. (*Id.*) Thus, the principal event

that gave rise to this June 11, 2003 lawsuit was the June 10, 2003 Premium Decision.[17] Because the

Decision was made in and issued from Baltimore, Maryland, (*see* June 10, 2003 Premium Decision;

Commissioner's October 17, 2003, "Four Issues Brief," at 22), venue is proper as to both the

Commissioner and the Trustees in the District of Maryland. 28 U.S.C. § 1391(e)(2); 28 U.S.C.

§ 1391(b).[18]

---

[17] Although the Trustees claim that one of the events giving rise to this lawsuit was their assessment of premiums from the District of Columbia, (*see* Trustees' October 17, 2003, "Four Issues Brief," at 16), it is undisputed that the issuance of premium bills by the Trustees succeeded the filing of the Complaint and could not logically have given rise to the claims in this lawsuit. At the time the original Complaint was filed on June 11, 2003, and even one month later when the plaintiffs' Amended Complaint was filed, the Combined Fund had yet to assess the premium amount to operators in this case. (*See* July 10, 2003, Plaintiffs' Amended Complaint, ¶ 35) ("On information and belief, the Combined Fund *intends to assess assigned operators . . . the premium amount set out in the Commissioner's 2003 Premium Decision*") (emphasis added).

[18] The District of Maryland also has personal jurisdiction over the Commissioner and the Trustees. The Commissioner resides in Maryland, giving the District of Maryland "general jurisdiction" over her. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-17 (1984). As to the Trustees, although the Combined Fund is administered in Washington D.C., (Trustees' October 17, 2003, "Four Issues Brief," at 16), the Trustees availed themselves of the privilege of conducting business with the Commissioner within the District of Maryland and that is sufficient for personal jurisdiction under both the first element of due process and the second element of "fair play and substantial justice." First, the significant contacts between the Trustees and the Commissioner in the District of Maryland regarding the premium calculation are both purposeful on the part of the Trustees and related to the matter at hand. *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Helicopteros*, 466 U.S. at 414-17 (1984); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Second, the requirements of fairness and equity are met given the District of Maryland's interest in resolving this matter and the insignificant burden on the Trustees to litigate in that forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.")

Because this case could have been brought in the District of Maryland against the Commissioner under either §§ 1391(e)(1) or (e)(2) and against the Trustees under § 1391(b)(2), the court finds that the District of Maryland is an appropriate transferee court.

## 2.  The Balance of Factors Weighs in Favor of Transfer.

Having decided that the District of Maryland is a proper transferee district, the court must now "decide whether the balance of convenience favors transfer." *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 504 (M.D.Ala.1994). In applying the law to the facts and allegations in the instant case, the court finds that the defendants have satisfied their burden of demonstrating that this action should be transferred for "the convenience of the parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). However, as discussed below, the court finds that transferring the case to the District of Columbia would "merely shift inconvenience from the defendants to the plaintiff[s]." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). Instead, the court finds that transfer to the District of Maryland is appropriate under §1404(a). The Commissioner concedes that the District of Maryland "would be a permissible transferee district whether or not venue is proper [in the Northern District of Alabama]." (Commissioner's October 17, 2003, "Four Issues Brief," at 21 n.9.)

The analysis under §1404(a) requires a balancing of practical considerations, which centers on convenience of the parties and witnesses, with the interest of justice, which focuses on fairness and efficiency. Before the court delves into that analysis, however, it must address the plaintiffs' choice of forum because, in this Circuit, a plaintiff's choice of forum typically is entitled to considerable deference. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *In re Ricoh Corp.*,

26

870 F.2d 570, 573 (11th Cir. 1989); 1 JAMES WM MOORE, ET. AL., *MOORE'S FEDERAL PRACTICE* ¶ 0.145[5] (1988).

### a. The Plaintiffs' Forum Choice Is Entitled Less Deference in this Case.

The plaintiffs' principal justification for selecting the Northern District of Alabama as their forum is set out as follows: "Plaintiffs have chosen this forum because this District Court and the Eleventh Circuit previously have resolved the very statutory construction issue presented in this action. Therefore, this Court may rule summarily on this action." (Plaintiffs' July 16, 2003, Opposition Brief, at 2.) This court finds that the deference typically afforded the plaintiffs' choice of forum is lessened in this case for three reasons.

First, the plaintiffs' admitted reason for selecting this forum, while couched as a balance of equities, amounts to nothing more than forum shopping, which is historically disfavored by the federal courts. *Hanna v. Plumer*, 380 U.S. 460, 468-70 (1965). As one district court noted, "[a] Plaintiff's obvious forum shopping merely adds weight to the other considerations favoring transfer [under § 1404(a)]." *Scheinbart v. Certain-Teed Products, Corp.*, 367 F. Supp. 707, 711-712 (S.D.N.Y. 1973); *see also Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 654-655 (11th Cir. 1993) (finding district court did not abuse its discretion by transferring case to Middle District of Georgia under § 1404(a) even though plaintiffs/appellants admittedly "sought a forum other than the Middle District because of the historical antipathy towards Civil Rights cases shown in that district").

Moreover, the disproportionate amount of the premiums owed by the Alabama plaintiffs, when compared to the amount owed by plaintiffs who reside outside the Eleventh Circuit, also leads to the conclusion that the plaintiffs sought sanctuary in the favorable law of this Circuit. The

Trustees represented at oral argument that A.J. Taft Coal Company, Inc. and Cowin & Company, Inc. (the Alabama plaintiffs counted for venue purposes) owe a combined premium amount of approximately $17,000.00, whereas the plaintiffs in this case who reside outside of the Eleventh Circuit owe approximately *$67 million* in combined premiums. The defendants' position is that the non-Alabama companies used Alabama residents as a Trojan horse attempting to reap the benefit of the Eleventh Circuit's *NCA* decision. The court is inclined to agree, particularly now that the claims of all the Alabama operators are moot. All of the relevant circumstances reveal a substantial threat that the plaintiffs brought suit in this court *because of NCA*, even though the *NCA* decision does not apply in the home circuits of the only plaintiffs that still have justiciable claims.

That the 2003 Premium Decision was made and issued from the District of Maryland is the second reason the plaintiffs' choice of forum is entitled less deference in this case. When "'the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration.'" *Gould v. National Life Insurance Co.*, 990 F. Supp. 1354, 1358 (M.D. Ala. 1998) (citation omitted). Moreover, in light of the Commissioner's concession and the Trustees' bills seeking the lower premiums from companies in Alabama, even the consequences of the Commissioner's decision have not occurred within this District. Because the Alabama plaintiffs are subject to the lower premium, the only plaintiffs affected by the application of a higher premium reside outside of Alabama. As noted above, the small premium amount owed by the plaintiffs who reside in the Eleventh Circuit is greatly disproportionate to the tremendous amount owed by plaintiffs who reside outside the Eleventh Circuit.

Finally, the Alabama plaintiffs' choice of home forum is entitled to less deference because the remaining ninety-four (94) plaintiffs in this case have *not* brought suit in their resident forum.

28

When there are numerous plaintiffs who could "'with equal show of right go into their many home courts [to bring suit against the Defendants], the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.'" *Gould*, 990 F. Supp. at 1358 (quoting *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524 (1947)). Although *Gould* was brought by a class of plaintiffs, and this suit was not, the *Gould* reasoning still operates here given the nationwide application of the Commissioner's premium calculation. Moreover, because the Alabama plaintiffs' claims are now moot, there is no plaintiff with a justiciable claim who chose its resident forum. For these reasons, the plaintiffs' choice of forum is entitled to less deference here than might typically be afforded.

### b. The Balance of Other Factors Weighs in Favor of Transfer.

Even though the chosen forum is due less deference in this case, the court must nonetheless find that the balance of factors clearly weighs in favor of transfer. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). Two broad categories of factors must be considered under the plain language of § 1404(a)– the convenience of parties and witnesses and the interest of justice.[19]

### i. Convenience of Parties and Witnesses

First, when considering the practical need to adjudicate in a forum convenient for the parties and witnesses, courts generally examine the location of principal material witnesses, "the relative ease of access to sources of proof," and the ability of the parties to bear the expense of changing the

---

[19] Although other courts have analyzed additional factors, the court finds these are the most appropriate to consider in this case.

29

forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). "[W]here the operative facts underlying the cause of action transpired" is a consideration for convenience. *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 50 (M.D.Ala.1994). Courts look to a forum where the trial is "most 'easy, expeditious and inexpensive.'" *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir.1981) (citation omitted).[20]

Several practical reasons motivate this court to transfer the case. First, the court finds that, should this dispute require discovery or a trial,[21] the majority of the material principal witnesses and documents or other sources of proof relating to the 2003 Premium Decision are likely to be located in the District of Maryland where the Commissioner made the decision.[22] Second, the court finds that the operative decision giving rise to this lawsuit occurred in the District of Maryland. Third, the Commissioner, whom the parties concede has the sole authority to calculate the premium at issue in this case, maintains a principal office in the District of Maryland.

Although the defendants argue that this case should be transferred to the District of Columbia, the court does not find that transfer to that District is appropriate because § 1404(a) does

---

[20] Fifth Circuit decisions rendered prior to October 1, 1981 constitute binding authority in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

[21] Although the court is unable to predict whether or not a trial will take place, the question of whether "reimbursements" is ambiguous is not preordained in the District of Maryland as it would be in the Eleventh Circuit or the D.C. Circuit and thus it is entirely possible that a hearing, or at least some discovery, will be necessary.

[22] Although some courts have questioned whether location of counsel is a relevant factor in evaluating *forum non conveniens (see e.g., In re Horseshoe Entertainment*, 305 F.3d 354, 358 (5th Cir. 2002)), the court notes that all the parties' principal counsel are located in Washington, D.C. Therefore, at a minimum, transfer to the District of Maryland will allow all the parties to substantially reduce litigation costs, which is without question a relevant factor.

not provide for transfer to a forum if it would "merely shift inconvenience from the defendants to the plaintiff[s]." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996); *see also Johnston*, 158 F.R.D. at 503. Transfer to the District of Maryland, where the 2003 Premium Decision giving rise to this action took place, is more than a mere shift of inconvenience.[23] Moreover, the defendants' contention that transfer to the District of Columbia is warranted because *Holland II* is pending there is not persuasive. The defendants' own argument that this case cannot proceed without the Commissioner because she is a Fed. R. Civ. P. 19(a) indispensable party weighs against transfer to the District of Columbia because *the Commissioner is not a party in Holland II.*

## ii.    **Interest of Justice**

The defendants suggest that this court should consider the equities of fairness and efficiency when it weighs the interest of justice. (Trustees' October 17, 2003, "Four Issues Brief," at 21.) The Supreme Court has told us that the "interest of justice" factor requires a district court to weigh "those public-interest factors of systematic integrity and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988). As outlined earlier, ninety-four (94) of the ninety-eight (98) plaintiffs in this case reside outside of the Eleventh Circuit and of the four plaintiffs who reside in the Eleventh Circuit, not one has a justiciable claim. In addition, thirty-eight (38) companies seek to intervene in this case although they, too, reside outside the Eleventh Circuit. Therefore, out of a total 136 plaintiffs/would-be plaintiffs who seek sanctuary in this District in order to reap the benefit of *NCA*, *0% are Alabama residents with a justiciable claim.* The court questions the fairness of allowing

---

[23] The court notes that, to the extent the District of Columbia is convenient because the Combined Fund is administered there and principal counsel for all parties reside there, the District of Maryland is no less convenient given that it is a mere trainride away from the District of Columbia.

over 100 companies to benefit from a decision in this Circuit when the vast majority of them reside in other circuits.

As for judicial efficiency, the parties present no arguments that weigh against transfer to the District of Maryland.  In fact, the only efficiency objection raised by the plaintiffs is a parade of horribles concerning the District of Columbia's backlog of cases and the statement that "it took the District of Columbia courts seven years to decide that the term 'reimbursements' in the Coal Act is ambiguous." (Plaintiffs' July 16, 2003,  Opposition Brief, at 14-17; Plaintiffs' October 17, 2003, "Four Issues Brief," at 17.)  The plaintiffs' arguments are unique to the D.C. courts, however, and to the extent such concerns exist,[24] they are remedied by transferring this case to the District of Maryland where there is no suggestion of inefficiency.

Perhaps an argument can be made that transfer to the District of Maryland is "inefficient" because the parties must litigate on a "clean slate" in that forum instead of one party starting out in the lead.  The court does not believe that such a view of efficiency is proper in a case such as this. A shortcut which deprives parties of their right to litigate issues unresolved in their judicial circuits is not more efficient.   To borrow an analogy from our nation's pastime, a batter will indeed have a shorter "at bat" if he steps to the plate with one or two strikes already having been called against him (as would be the case for the plaintiffs if the case were transferred to the D.C. District Court), or three strikes already called against him (as would be the case for the Trustees–and to a lesser degree the Commissioner–if the case were to remain in this District).  That may speed the game along, but no one would say that it would make it more "efficient."

_____

[24] This court specifically declines to find, as the plaintiffs have invited it to do, that the district courts in the District of Columbia are inefficient.

32

Furthermore, even if efficiency were to equal nothing more than speed of result, that is precisely why another factor, fairness, must also be considered in determining "the interest of justice." The court finds that the need for fairness outweighs efficiency of speed to result. None of the plaintiffs in this case were themselves parties to *NCA* or *Holland I*. Nor have the circuit courts of any of the states where those plaintiffs with justiciable claims reside interpreted the statute in question.

Accordingly the court finds that the balance of factors weighs in favor of transfer to the District of Maryland, where the case could have been filed originally.

## IV.   Conclusion

Based on the foregoing, the court determines that venue was proper in this court at the time the case was filed, that due to either lack of standing or mootness there is no case or controversy involving any of the Alabama plaintiffs, and that the case is due to be transferred to the District of Maryland.   A separate order shall be entered.

**DONE** and **ORDERED** this ___14th___ day of November, 2003.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

33